IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

CAN JIN a/k/a DAVID CHOI and SONG     )
SEN CUI                               )
                                      )
        Plaintiffs,                   )
                                      )          CIVIL ACTION
vs.                                   )          FILE NO.  2009CV169015
                                      )
TERRACE MORTGAGE COMPANY,             )
GMAC MORTGAGE, LLC.,                  )
CITIFINANCIAL SERVICES, INC.,         )
MORTGAGE ELECTRONIC                   )
REGISTRATION SYSTEMS, INC., and       )
DOEs 1-10, inclusive                  )
                                      )
        Defendants.                   )

## NOTICE OF FILING NOTICE OF REMOVAL

TO:     [CATHELENE "TINA" ROBINSON]
        Clerk of Superior Court
        Lewis Slaton Courthouse, Room C-155
        136 Pryor Street S.W.
        Atlanta, GA 30303

        Irene Kim
        GEERDES AND KIM, LLC
        3483 Satellite Blvd.
        Suite 221 South
        Duluth, GA 30096


        Please take notice that on June 19, 2009, Defendants GMAC Mortgage, LLC and

Mortgage Electronic Registration Systems, Inc., filed with the Office of the Clerk of the United

States District Court for the Northern District of Georgia, Atlanta, Division, a Notice of

Removal.  A copy of the Notice of Removal is attached hereto as Exhibit A.

        This 19th day of June, 2009.

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP

By _____

Paul T. Kim
Georgia Bar No. 418841
LOCKE LORD BISSELL & LIDDELL LLP
The Proscenium, Suite 1900
1170 Peachtree Street, N.E.
Atlanta, GA 30309
Phone: 404-870-4600
Fax: 404-872-5547
pkim@lockelord.com

***ATTORNEYS FOR DEFENDANTS GMAC
MORTGAGE, LLC and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 19, 2009, a true and correct copy of the foregoing

document was served via certified mail, return receipt requested upon the following:

Irene Kim
GEERDES AND KIM, LLC
3483 Satellite Blvd.
Suite 221 South
Duluth, GA 30096
Tel:  404-257-1777
Fax:  404-257-1050

*Counsel for Plaintiff*

Christopher J. Willis
John K. Larkins III
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
Tel:  404-420-4700
Fax:  404-525-2224

*Counsel for Defendant CitiFinancial Services, Inc.*

Paul T. Kim

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 1 9 2009

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAN JIN a/k/a DAVID CHOI and SONG SEN CUI,  §<br>§<br>§<br>**Plaintiffs,**  §<br>§<br>**vs.**  §<br>§<br>TERRACE MORTGAGE CO.,  §<br>GMAC MORTGAGE, LLC,  §<br>CITIFINANCIAL SERVICES,  §<br>INC., MORTGAGE ELECTRONIC  §<br>REGISTRATION SYSTEMS, INC.,  §<br>and DOES 1-10, inclusive,  §<br>§<br>**Defendants.**  § | **1 09-CV-1640**<br><br>CIVIL ACTION NO. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, Defendants GMAC

Mortgage, LLC ("GMACM") and Mortgage Electronic Registration Systems, Inc.

("MERS") (collectively "Removing Defendants") hereby remove this case from

the Superior Court of Georgia, Fulton County, to the United States District Court

for the Northern District of Georgia, Atlanta Division, and respectfully state as

follows:

## STATEMENT OF THE CASE

1.    On May 12, 2009, an action was commenced in the Superior Court of Georgia, Fulton County, entitled *Can Jin a/k/a David Choi and Song Sen Cui v. Terrace Mortgage Co., et al.*, Case No. 2009-CV-169015 (the "State Court Action"). True and accurate copies of the summons and complaint in the State Court Action (the "Complaint") are attached hereto as "Exhibit A."

2.    GMACM was served with a copy of the Complaint on May 22, 2009. MERS was served with a copy of the Complaint on May 22, 2009. This Notice of Removal is being filed within 30 days of receipt of the Complaint. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b).

3.    The Complaint purports to assert ten causes of action, identified and/or generally alleged as follows: (1) violation of the Georgia Uniform Deceptive Trade Practices Act, (2) violation of the Georgia Residential Mortgage Act, (3) breach of imputed duty per Georgia Fair Business Practices Act, (4) fraud, (5) fraud in the inducement, (6) conversion, (7) quiet title, (8) civil conspiracy, (9) violation of Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), and (10) petition for interlocutory injunctive relief.

## FEDERAL QUESTION JURISDICTION

4.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States.  The Supreme Court has held that "a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 436 U.S. 1, 9 (1983). Further, as the Eleventh Circuit has recognized, federal question jurisdiction arises where a party has asserted an action under Georgia RICO and the underlying violations involved federal mail fraud.  *Ayres v. General Motors Corp.*, 234 F.3d 514, 517-18 (11th Cir. 2000).

5.      Here, Plaintiffs have alleged federal mail fraud as part of the alleged RICO scheme.  *See* Exhibit A, ¶ 92.  Accordingly the resolution of this matter turns upon federal questions, and this Court has jurisdiction.

6.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law and common law claims asserted by Plaintiffs because those claims asserted form part of the same case or controversy.

7.      Defendants GMACM and MERS have consented to the removal of this action.

8.     Defendant CitiFinancial Services, Inc., who filed an Answer on June 15, 2009 in the State Court Action, also consents to this removal. *See* "Exhibit B" hereto.

9.     Upon information and belief, no other defendants have been served in this action, as no return of service has been filed with the Superior Court of Georgia, Fulton County as of June 18, 2009, or are nominal or unknown defendants, and therefore, additional consent to this removal is not required. *See Tri-Cities Newspapers, Inc. v. Tri-Cities P.P. & A Local 349,* 427 F.2d 325, 326-27 (5th Cir. 1970); *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1429 (9th Cir. 1984). Accordingly, all properly served and joined defendants, excluding nominal, unknown and fraudulent joined parties, have consented to this Notice of Removal.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Northern District of Georgia, Atlanta Division, is the federal judicial district and division embracing the Superior Court of Georgia, Fulton County, where the State Court Action was originally filed.

11.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all the process, pleadings, and orders on file in the State Court Action or served on the Removing Defendants are attached collectively hereto as "Exhibit C."

## **CONCLUSION**

WHEREFORE, Defendants GMACM and MERS hereby remove this Action from the Superior Court of Georgia, Fulton County to the United States District Court for the Northern District of Georgia, Atlanta Division. By this Notice of Removal and the associated attachments, Removing Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action. Removing Defendants intend no admission of fact, law or liability by this Notice, and expressly reserve all defenses, motions and/or pleas. Removing Defendants pray that the State Court Action be removed to this Court, that all further proceedings in the State Court Action be stayed, and that Removing Defendants receive all additional relief to which they are entitled.

This the 19th day of June, 2009.

Respectfully submitted,

Paul T. Kim
Georgia Bar No. 418841
LOCKE LORD BISSELL & LIDDELL, LLP
The Proscenium, Suite 1900
1170 Peachtree Street, NE
Atlanta, GA 30309
(404)-870-4678 - *telephone*
(404)-872-5547 - *facsimile*
pkim@lockelord.com

*Attorneys for Defendants GMAC MORTGAGE,*
*LLC and MORTGAGE ELECTRONIC*
*REGISTRATION SYSTEMS, INC.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this Notice of Removal was prepared using Time New Roman 14 point , in accordance with L.R. 5.1(B).

Paul T. Kim
Georgia Bar No. 418841
LOCKE LORD BISSELL & LIDDELL, LLP
The Proscenium, Suite 1900
1170 Peachtree Street, NE
Atlanta, GA 30309
(404)-870-4678 - *telephone*
(404)-872-5547 - *facsimile*
pkim@lockelord.com

*Attorneys for Defendants GMAC MORTGAGE,*
*LLC and MORTGAGE ELECTRONIC*
*REGISTRATION SYSTEMS, INC.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 19, 2009, a true and correct copy of the foregoing document was served via U.S. certified mail, return receipt requested, upon the attorney for Plaintiffs at the following:

Irene Kim, Esq.
Geerdes and Kim, LLC
3483 Satellite Blvd.
Duluth, Georgia 30096
(404) 257-1777
(404)-257-1050 (fax)

*Counsel for Plaintiff*

Christopher J. Willis
John K. Larkins III
2700 International Tower
229 Peachtree St., NE
Atlanta, GA  30303
Dir.:  (404) 420-4700
Fax:  (404) 525-2224

*Counsel for Defendant CitiFinancial Services, Inc.*

Paul T. Kim

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

FILED IN OFFICE

MAY 1 2 2009

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| CAN JIN a/k/a DAVID CHOI and SONG SEN CUI, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| TERRACE MORTGAGE COMPANY, GMAC MORTGAGE, LLC., CITIFINANCIAL SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOEs 1-10, inclusive | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No: 2009CV169015

## COMPLAINT

Plaintiffs, CAN JIN a/k/a DAVID CHOI and SONG SEN CUI, (both are hereafter referred to as "Plaintiff"), by and through attorney, hereby files this complaint against Defendants TERRACE MORTGAGE COMPANY, GMAC MORTGAGE, LLC., CITIFINANCIAL SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC and DOEs 1 through 10, inclusive, (hereinafter collectively known as "defendants") alleging and showing the Court the following:

## PARTIES

1.      Plaintiff currently owns property located at 220 Henley Place, Duluth, Georgia, Fulton County, 30047 (hereinafter "Subject Property").

1

2.      Upon information and belief, Defendant, TERRACE MORTGAGE COMPANY, at all times mentioned herein, regularly conducts business in and throughout the State of Georgia.

3.      Upon information and belief, Defendant, GMAC MORTGAGE, LLC., at all times mentioned herein, regularly conducts business in and throughout the State of Georgia.

4.      Upon information and belief, Defendant, CITIFINANCIAL SERVICES, INC., at all times mentioned herein, regularly conducts business in and throughout the State of Georgia.

5.      Upon information and belief, MORTGAGE ELCTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS") regularly conducts business in and throughout the State of Georgia.

6.      Plaintiff is ignorant of the true names and capacities of defendants sued as DOEs 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

7.      Plaintiff is informed and believes, and based on information and belief, alleges that at all times mentioned in this complaint defendants were agents, servants, partners and/or employees of co-defendants, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-defendants.

8.      Any allegations about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors,

2

employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority and/or within the scope of their agency if acting as an agent of another.

9.     Plaintiff believes and is informed and, on that basis, alleges that each of the said defendants, including the DOE defendants, were in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein. Each defendant committed the acts alleged in this Complaint.

10.     Additionally, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing the other defendants were engaging or planning to engage in unlawful conduct, each defendant nevertheless facilitated and even directed or assisted in the commission of the unlawful acts. Each defendant intended and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been ascertained.

11.     At all relevant times, defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continue to the present.

3

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

12.     Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

13.     Venue and jurisdiction is proper in this court because injury and damage to Plaintiff occurred in its jurisdictional area, the property is located in this jurisdictional area and the unlawful practices were committed in this jurisdictional area.

## GENERAL ALLEGATIONS

14.     This action is brought against Defendants, who unlawfully committed deceptive and unfair business practices, fraud, fraud in the inducement, conversion, cloud on title, and defamation, warranting remedies and judgment at law for damages as well as equitable injunctive relief.

15.     Defendants are mortgage lenders, servicers and/or trustees. Defendants' residential lending business model consists of making as many residential loans and/or loans made to borrowers with limited or impaired credit.

16.     Defendants did business as wholesale lenders. That is, mortgage brokers, under contracts with Defendants and working closely with defendants' sales representatives, originated loans which were underwritten by defendants.

17.     Defendants sold a majority of their residential loans to the secondary market, that is, third-party investors or qualifying special-purpose entities that issue interest-bearing securities representing the loans' interest stream. After selling the loans for securitization or to third-party investors, defendants typically were required to repurchase those loans

4

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

only in limited circumstances, for instance, in the event of documentation errors, underwriting errors, fraud, or early payment defaults.

18.      While Defendants claimed to maintain underwriting guidelines that assessed the ability of the Plaintiff to repay debt, they purposefully relaxed their underwriting guidelines and sold a risky loan product to Plaintiff to increase their loan origination volume. Defendants' underwriting standards eventually grew so lax that in many instances, its underwriters took no meaningful steps to determine whether borrowers like the Plaintiff could actually repay a loan for the purpose of funding higher loan volumes for leveraged returns.

19.      Defendants violated and ignored the law by failing to clearly and conspicuously disclose to Plaintiff key provisions of Plaintiff's mortgage, including but not limited to such details of adjustable interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

20.      Defendants violated the law  when it provided undisclosed financial incentives, fees, payments and other things of value to its agents, account executives, loan officers, and brokers marketing and selling its product, said payment and incentives constituting a prohibited kickback, referral fee or other things of value.

21.      Defendants' business model of making loans for quick resale rendered defendants indifferent to whether Plaintiff could afford the loan beyond defendants' exposure period to risk. This risk period was in effect only as long as it was required to sell the loan to the secondary market. This indifference translated into defendants maximizing loan resale profits through funding unfair and exceedingly risky loan products, engaging in unfair

5

underwriting practices, and conducting deceptive loan sales practices through its own conduct and the conduct of mortgage brokers, in order to sell an illegal and fraudulent loan to the unsuspecting Plaintiff.

22.     Defendants focused on creating unduly risky loans for profitability.  Defendants received fees not only for originating loans but for reselling pre-packaged loan bundles or securities at a guaranteed rate of return. Due to defendants' compensation structure and policies, employees, brokers, loan officers, and related defendants were encouraged to steer Plaintiff into costly mortgages with higher interest rates and for a larger amount in order to maximize their profits. To support Plaintiff's application for the unduly risky loan, defendants through its employees, agents, sale representatives and the mortgage brokers and appraisers inflated the appraised value of the applicant's home. The defendants, intentionally or recklessly, failed to verify or audit the information and avoided implementing reasonable measures that would have prevented or limited these fraudulent practices.

23.     To further increase the Defendants' revenue, Plaintiff's loan was not designated for long-term viability. This business model relied on perpetual increase in Plaintiff's home valuation. As soon as the housing market flattened Plaintiff incurred substantial negative equity in the property.

11.     Defendants failed to maintain fair, prudent and truthful underwriting standards, wrongfully motivated by the profits to be made in the secondary market rather than the actual ability of the borrower to repay.

6

12.     Plaintiff was targeted for a loan that held maximum profitability value, which meant the costliest, riskiest loan for the Plaintiff, with little or no long-term viability.

13.     Defendants failed to take reasonable precautions to make certain the Plaintiff understood the actual terms, risks, and consequences of their loan, and in fact obstructed the process of a borrower obtaining the necessary information to make the most prudent decision possible. Plaintiff's application for the unduly risky loan was further aided by inflated appraisals and lax quality control.

14.     Defendants as mortgage lenders, investors and wholesalers, and as a pattern and deliberate practice, focused on creating massive amounts of unduly risky residential mortgage loans ("RML") for profitability. This is because Defendants' income stream came not only from fees for originating loans but then selling, assigning, and/or transferring the loans. As such, Defendants maintained very little risk and only in limited circumstances such as documentation errors, underwriting errors, fraud, or early payment defaults. In turn, Defendants bore little monetary cost and received optimal financial benefit for inducing consumers to take the most expensive loans possible with little limitations as to qualifications.

16.     An aspect of this systematic misconduct was the Defendants' compensation structures and policies for employees, brokers, loan officers, and related Defendants. They were encouraged and duly rewarded to steer Plaintiff to larger principal loan amounts in order to maximize their own profits.

7

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

17.     Furthermore, in order to support Plaintiff's application for the unduly risky loan, Defendants by and through their agents, employees and contracted appraisers, inflated the appraised value of the loan applicant's home.

18.     Essentially, Defendants' business model relied on a perpetual increase in Plaintiff's home valuation because many loans such as Plaintiff's were at or near 100% loan to value. As soon as the housing market flattened, Plaintiff incurred substantial negative equity in his home. Additionally, through Defendants' policies of choosing the appraiser and hiring only appraisers that would appraise the value of the property at whatever the Defendants' loan called for, Defendants could increase the property value and therefore increase the loan amount subsequently raising their fees in the process. Also, by increasing the value of the loan, Defendants would be able to resell the loans at a higher price to increase their profit margins.

19.     Defendants created residential mortgage loans (hereinafter "RML") that Defendants sold to Plaintiff with the intent and design to fraudulently and negligently maximize profits.

20.     The Defendant induced Plaintiff to accept Defendants' risky loan by misleading and false statements, and withholding of material information.

21.     The Defendants knew or should have known that Plaintiff's loan was not viable and would likely to result in foreclosure, due to Defendants' acts, intentions and designs.

24.     In furtherance of their deceptive and illegal practices, defendants worked with appraisers and other agents to inflate the value of borrowers' homes, including the Plaintiff's home. Through defendants' policies of choosing the appraiser and hiring only

8

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

appraisers that would appraise the value of the property at whatever the defendants' loan

called for, defendants could increase the property value and therefore increase the loan

amount subsequently raising their fees in the process. By increasing the value of the loan,

defendants would be able to resell the RML at a higher price to increase their profit

margins.

25.      The defendants knew or should have known that Plaintiff's loans would likely

result in default and foreclosure, particularly in light of their qualification of Plaintiff's

ability to pay based only on their ability to pay and their reliance on serial refinancing,

which in turn relied on a false assumption of perpetual home price appreciation.

Defendants' lack of underwriting standards also contributed to the inability of the

Plaintiff to pay his loan long-term by intentionally or neglecting to adequately review

borrowers financial and employment documentation.


**I. DEFENDANTS ENCOURAGED MORTGAGE BROKERS UNFAIR AND
DECEPTIVE CONDUCT BY REWARDING BROKERS WHO SOLD RISKY
AND INAPPROPRIATE LOAN PRODUCTS WITH LITTLE OR NO
DOCUMENTATION AND PROVIDED NO MEANINGFUL OVERSIGHT OF
BROKERS CONDUCT WITH RISK LACED INCENTIVES.**

26.      Defendants further exacerbated the unfair and deceptive loans described above by

relying on third party mortgage brokers to sell its loans. Defendants induced and

rewarded these mortgage brokers to originate unduly risky, inappropriate, and in some

cases, fraudulent, loans while failing to monitor these brokers' sales and underwriting

conduct in a meaningful way.

9

27.     Driven by its push for market share and profits, defendants did whatever it took to
sell more loans, faster – including easing its underwriting criteria and disregarding
minimal oversight of mortgage brokers. By easing and disregarding its underwriting
criteria, defendants increased the risk that borrowers like Plaintiff would default and lose
their home.

28.     For example, defendants, mortgage brokers, and their agents eased their
underwriting standard by allowing low, stated, and no documentation loans.
Traditionally, lenders required borrowers seeking mortgage loans to document their
income by providing W-2's or tax returns or other documents such as bank statements,
asset statements, and pay stubs. Defendants, however, disregarded such documentation
requirements with respect to its riskiest and costly loan products and introduced a variety
of reduced or no documentation loan programs that eased and quickened the loan
origination process. Further, they would allow Stated Income Stated Assets "SISA"
programs where a borrower's income and assets were stated but not verified at or nearly
at 100% loan to value, which was the case in Plaintiff's loan application.

29.     These low and no documentation programs, such as SISA, enabled defendants
and their brokers to process loans more quickly and therefore to originate more loans.
Stated income loans also encouraged the overstating of income – loan brokers and
officers either overstated the borrowers' income without their knowledge, or led
borrowers into overstating their income without explaining the risk of default that the
Plaintiff would face with a loan and monthly fees they could not actually afford.

10

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

30.     Defendants and their brokers also relaxed traditional underwriting standards used to separate acceptable from unacceptable risk in order to produce more loans for the secondary market. Traditionally, the depth of credit and thereby worthiness of borrowers played a crucial role in determining whether they could obtain a loan. However, as the pursuit of profits became the primary goal of defendants, the credit score itself became most important – the threshold number becoming lower and lower – with disregard for the borrowers' future ability to pay based on previous payment habits. Further, defendants and their brokers began disregarding the importance of loan-to-value ratios, debt-to-income ratios, and other factors designed to protect borrowers and borrowers' ability to pay within their means for the entire lifetime of the RML.

31.     Due to the fact that riskier and higher loan amounts would produce a greater financial reward to defendants, they encouraged and incentivized brokers to focus on producing only those loans. As discussed previously, part of this structure was higher commissions and other incentives to mortgage brokers who provided large and risky loans. In return, the defendants passed on the excess compensation to the borrower by way of increased origination fees, higher interest rates, and/or larger credit spreads above the index value.

32.     To further encourage brokers and agents to bring in more RML's, defendants provided little to no oversight of broker's conduct. As long as brokers provided loans that defendants could sell to the secondary market, defendants had the financial incentive to continue receiving loans regardless of the documentation, or lack thereof, on the RML's.

11

33.     Also, to further the deceptive scheme, defendants created a high-pressure sales environment that propelled its mortgage brokers to meet high production goals and close as many loans as they could without regard to Plaintiff's ability to repay. Defendants' high-pressure sales environment also propelled mortgage brokers to sell the risky and costly types of loans, many times inappropriate for the borrowers. This system of compensation aided and abetted brokers in breaching their trust to borrowers by inducing borrowers like Plaintiffs to accept unfavorable loan terms without full disclosure of the borrowers' options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

## SPECIFIC ALLEGATIONS

34.     Plaintiff originally purchased the Subject Property for $354,000.00 in February of 2006. To finance the purchase, Plaintiff was induced into obtaining a mortgage for $354,000.00.

35.     In April of 2007, Plaintiff was induced into getting a home equity line of credit from Citifinancial Services, Inc., for $15,858.86, at 20.99% interest rate.

36.     Plaintiff was not only induced into obtaining a home equity line of credit at an exorbitant rate, Defendant, Citifinancial Services, Inc., also induced the Plaintiff into purchasing various types of insurance, from the Defendant, with the home equity line of credit, including: Credit Life, Credit Disability, and unemployment insurance, which the Plaintiff did not understand he was getting, and resulted in the Plaintiff paying an additional $1,968.83 in premium payments for the insurance coverage.

12

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

37.     Defendant Terrace Mortgage Company, assigned the $354,000.00 mortgage to
        GMAC Mortgage, LLC.

38.     Plaintiff has a beneficial interest in the subject property which is estimated fair
        market value currently to be less than $330,000.00.

39.     Due to the mortgage and home equity line of credit, and the house being
        significantly 'upside down', i.e. debt on property is higher than market value, Plaintiff is
        unable to refinance.

40.     Defendants disregarded and ignored Plaintiff's actual ability to pay off the loans
        and steered Plaintiff to loans he could not afford to increase their own profit.

41.     The defendants induced Plaintiff to accept defendants' risky loan products by: (1)
        failing to clearly and conspicuously disclose whether stated monthly payments included
        amounts due for insurance and taxes, which they generally did not; (2) failing to clearly
        and conspicuously disclose closing costs and fees; (3) making false promises that
        defendants could refinance the loan prior to a rate increase; (4) failing to disclose the true
        costs and risks associated with the false promise that refinancing would be available as an
        exit strategy when the defendants' loan became unaffordable; (5) fraudulently promising
        that the value of the property would increase and therefore the Plaintiff could easily
        refinance their property, (6) steering Plaintiff away from safer, fixed rate, prime loans
        that they could afford in order to maximize their fees and profits; (7) false marketing acts
        that were designed to mask the true costs and risks of the loans and to hide the benefits of
        other, safer, loan products, and inducing Plaintiffs to purchase insurance that was not
        necessary.

13

COUNT I

## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (AS TO ALL DEFENDANTS)

42.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

43.    A person engages in a deceptive trade practice within the meaning of the Uniform Deceptive Practices Act (UDTPA) when he "causes a *likelihood* of confusion or of misunderstanding," misrepresentations are made concerning approval or certification of a product, the standard, quality or grade of a product is misrepresented, OR any other conduct exists that similarly creates a likelihood of confusion or misunderstanding. O.C.G.A. § 10-1-372(a)(2), (5), (7), (8), (12).

44.    Defendants as mortgage lenders, by engaging in illegal activity in the practice of originating, transferring, assigning, selling and developing home mortgage loans in the general marketplace  via misrepresentation and fraud, have committed deceptive trade practices in the state of Georgia in violation of  O.C.G.A. § 10-1-370 et seq.

45.    Defendants' fraudulent acts, deliberately misleading and false statements, change of underwriting standards and their clearly predatory business model is undoubtedly likely to lead to confusion and misunderstanding.  As a result of defendants' acts, there is likelihood of confusion and misunderstanding about the legitimacy of the RML sold by the defendants, the actual terms and conditions of the RML and their application to Plaintiff, and the dangerous and unnecessary risks of financial and emotional hardship inherent in the RML that are unknowingly burdened by the consumer.

14

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

46.     Defendants engaged in such deceptive trade practices for their wrongful profit, intentionally preying on the Plaintiff's and other consumers' limited access to information, understanding and capacity regarding the product the defendants designed, manufactured, and sold – the RML.

47.     Such practices included falsely promising that Plaintiff may refinance for an optimal fixed interest at a time of their choosing, falsely assuring the value of the property, and representing that the RML is approved based on Plaintiff's and the home's actual financial conditions even though the true primary standard was maximum resale value for the secondary market through exploitation of the Plaintiff.

48.     Plaintiff has been caused irreparable harm and great financial hardship due to Defendants' deceptive trade practices.

WHEREFORE, Plaintiff prays for interlocutory and permanent injunctive relief as set forth below.

## COUNT II

### VIOLATION OF THE GEORGIA RESIDENTIAL MORTGAGE ACT

49.     The Georgia Residential Mortgage Act (GRAMA) governs mortgage lenders and the manner in which they transact with borrowers by explicitly prohibiting acts. Yet these are the very acts that were committed by the Defendants.

50.     Defendants violated O.C.G.A. § 7-1-1013 (1) by misrepresenting the material facts, making false statements and promises, and submitting false statements and/or documents that influenced, persuaded, and induced the Plaintiff in their application for and execution of a mortgage loan, and, through agents or otherwise, pursued a course of

15

misrepresentation to the Plaintiff by use of fraudulent and/or unauthorized documents and other means.

51.     Defendants violated O.C.G.A. § 7-1-1013(2) by misrepresenting and concealing and causing another to misrepresent or conceal material factors, terms and conditions of the mortgage transaction to which defendants, mortgage lenders or brokers, were a party, pertinent to the Plaintiff or in the Plaintiff's application for a mortgage loan.

52.     Defendants violated O.C.G.A. § 7-1-1013(6) by engaging in transactions, practices, and course of business which were not in good faith or fair dealing, and which operated as a fraud upon the Plaintiff, in connection with the attempted and actual making of, purchase of, transfer of, and sale of Plaintiff's mortgage loan.

53.     Defendants violated O.C.G.A. § 7-1-1013(7) by engaging in fraudulent home mortgage underwriting practices.

54.     Defendants violated O.C.G.A. § 7-1-1013 (9) by making, directly or indirectly, a residential mortgage loan with the intent to foreclose on the borrower's property.   The presumption per the GRMA statue is met in that at the time loan was made, there were: (a) a lack of substantial benefit to the borrower; (b) lack of probability of full payment of the loan by the borrower; and (c) there exists a significant proportion of similarly foreclosed loans by the defendants per their unfair, fraudulent and deceptive acts practices, and systems.

55.     Defendants violated O.C.G.A. § 7-1-1013(10) collecting a mortgage debt by extortionate means, in that defendants do not have the right to collect on the illegal loan,

but have threatened negative credit reporting, declaration of default and foreclosure in an extortionist attempt to collect.

56.     Through their misrepresentations, concealment of material facts, fraudulent actions, and bad faith and predatory business practices set up to exploit the Plaintiff for the defendants' maximum profit, defendants acted with wanton disregard as to the benefit or harm to the Plaintiff in the making and servicing of the loan rampantly violated explicit statutory restrictions per the GRMA.

57.     Furthermore, defendants' actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights, thereby justifying the award of punitive damages in an amount to be proven at trial.

58.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT III

### BREACH OF IMPUTED DUTY PER
### GEORGIA FAIR BUSINESS PRACTICES ACT

59.     Under the Georgia Fair Business Practices Act, defendants owe a duty to the Plaintiff, as businesses availing themselves of the marketplace, to act with due care, diligence and good faith in developing, originating, marketing and selling their loan products.

17

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

60.     Defendants breached their duty by deliberately leading Plaintiff into an

unnecessarily costly loan, failing to properly assess the suitability of the loan as to the

Plaintiff's ability to pay, artificially inflating the property value, failing to properly

inform and explain actual terms, conditions, costs and risks of the loan, and maintaining a

system of practice that rather than controlled, encouraged wanton and reckless conduct

towards the Plaintiff in regards to the Loan.

61.     As direct a result of the defendants' breach, Plaintiff has been greatly harmed.

62.     Defendants' breach has caused Plaintiff damage in an amount to be determined at

trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the

amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT IV

### FRAUD
### (AS TO ALL DEFENDANTS)

63.     Plaintiff realleges and incorporates by reference all paragraphs above, as though

fully set forth in this cause of action.

64.     Defendants represented to Plaintiff that all the statements made to them in the

origination and underwriting of the RML were true and that the value of the Subject

Property which supported the loan was also true, while concealing defendants' scheme of

conspiracy to exploit Plaintiff for maximizing profits on the secondary market.

Defendants' actions and representations were false and defendants knew they were false

and made such representations without regard to their truth.

18

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

65.     When defendants made their false representations relating to the terms and conditions of the loan, the basis for the offering of such terms and conditions, and of the value of the property, defendants made them with the intent that Plaintiff would rely on them and sign the loan documents and secure the Subject Property for said loan.

66.     Defendants represented themselves as loan experts and represented their employees or third parties such as the appraiser as experts in the field. Plaintiff relied on defendants' representations and said reliance was reasonable due to defendants' advertisement, assertions, licensing and experience in the mortgage industry.

67.     Plaintiff in turn did not have equal opportunity to discover the truth, and reasonably relied on defendants' misrepresentations to Plaintiff's detriment.  Defendants fraudulently induced Plaintiff into the loan, and wrongfully extracted payments pursuant to a fraudulent note and security deed.

68.     Furthermore, defendants' actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights, thereby justifying the award of punitive damages in an amount to be proven at trial.

69.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at trial. At a minimum, it includes the irreparable harm to Plaintiff's credit score and the amount overpaid by Plaintiff on the fraudulently obtained RML on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT V

## FRAUD IN THE INDUCEMENT
## (AS TO ALL DEFENDANTS)

19

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

70.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

71.     In order to induce the Plaintiff to agree to purchase unnecessary insurance and risky loans, the defendants made a series of fraudulent promises. These promises include but are not limited to statements about the increase in value of the property, the ease that refinancing would occur, the glossing over of actual monthly payments and the real costs and risks of high interest rate, and the assurance that the value of the property was fair and legitimate.

72.     Plaintiff reasonably relied on defendants' representations and promises due to the fact that they were Lenders and mortgage brokers who were presented as experts in the field.

73.     Furthermore, defendants' action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's consumer protection rights thereby justifying the award of punitive damages in an amount to be proven at trial.

74.     Defendants' fraud has caused Plaintiff damage in an amount to be determined at trial. At a minimum, it includes irreparable harm to Plaintiff's credit score and the amount overpaid to defendants on the fraudulently obtained RMLs on the Subject Property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## COUNT VI

## CONVERSION
## (AS TO ALL DEFENDANTS)

20

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

75.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

76.     As mentioned previously, the defendants induced the Plaintiff to agree to the unnecessary insurance and risky loans through fraud, deceit, and unfair and deceptive business practices in violation of Georgia state law. Further, the defendants set an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage.

77.     By raising the monthly payment rate, the defendants extracted from the Plaintiff a higher amount than the Plaintiff legitimately should have paid.   Further, as required by defendants' own policies, any payments made in excess of the amount owed should be applied directly to the principle of the account. The defendants violated Georgia state law and their own policies by applying the extra payments to interest that was not legitimately owed by the Plaintiff. The defendants improperly converted said funds of Plaintiff for their own use and benefit, thereby making more fraudulent, and risky loans to unsuspecting borrowers.

78.     The monies converted were specific as to source and trial. Defendants extracted specific mortgage payments from the Plaintiff's bank account for deposit into a debt account labeled as a RML for the Subject Property pursuant to an illegal loan, Defendants have committed unlawful conversion of Plaintiff's personal funds for their own unlawful use.

21

79.     Furthermore, defendants' actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's legal rights as they committed conversion justifying the award of punitive damages in an amount to be proven at trial.

80.     Due to the defendants' conversion, Plaintiff has suffered severe financial hardship.   Plaintiff has been damaged in the amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNT VII

### QUIET TITLE
### (AS TO ALL DEFENDANTS)

81.     Plaintiff realleges and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

82.     At all times herein, defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and value of the property with the intent to exert undue influence.

83.     Plaintiff was under unfair persuasion amounting to undue influence because defendants positioned themselves in the market where the Plaintiff was justified in assuming that the defendants would not act in a manner inconsistent with Plaintiff's welfare and best interests.

84.     At all time herein, defendants gained unfair persuasion and undue influence by improper means including but not limited to misrepresentations, undue flattery, and fraud.

22

85.    Defendants by fraud received an iniquitous deed to secure debt to the property for a loan that Plaintiff should not have given or been allowed to take. This loan would not have taken place but for defendants' wrongful conduct.

86.    Furthermore, defendants' action were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's rights thereby justifying the award of punitive damages in the amount to be proven at trial

87.    Defendants have created an illegal cloud on title. Plaintiff has suffered severe financial hardship as a result. Plaintiff requests that the court invalidate the deed of trust on the property.

WHEREFORE, Plaintiff prays for judgment as set forth below;

## COUNT VIII

### CIVIL CONSPIRACY
### (AS TO ALL DEFENDANTS)

88.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

89.    Defendants, and each of them, agreed to form and operate a business relationship wherein the originator of the loan would process the loan application in a manner that each defendant knew or should have known was malicious, wrongful, and unlawful for the reasons stated in this complaint. The business relationship between the parties gave the originator of the loan the right to assign, sell or otherwise transfer said unlawfully originated loan to its fellow defendants, which each defendant would, in turn, acquire the right to sell, assign or otherwise transfer for a profit.

23

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

90.     As a result of this conduct, defendants, and each of them, damaged Plaintiff in an amount to be proven at trial.

WHERFORE, Plaintiff prays for judgment as set forth below;

## COUNT IX

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (AS TO ALL DEFENDANTS)

91.     Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

92.     Defendants violated RICO pursuant to O.C.G.A. §16-14-1 et seq. Each time Plaintiff's fraudulent loans were refinanced, assigned and transferred; each time Plaintiff loans were used as means to extract inflated payments from Plaintiff for the Defendants' benefit; each time the profits generated from Plaintiff's loans were used to perpetuate further acts of fraud by issuing and selling more fraudulent loans throughout the state, defendants committed multiple predicate acts of fraud. Moreover, in order to perpetuate these multiple frauds, defendants used the mail in furtherance of their scheme.

93.     Due to the defendants' RICO violations, Plaintiff has suffered severe financial hardship. Plaintiff has been damaged in the amount to be proven at trial. Second, Plaintiff requests reasonable attorney fees and costs.

94.     WHEREFORE, Plaintiff prays for judgment as set forth below.

## COUNY X

## PETITION FOR INTERLOCUTORY INJUNCTIVE RELIEF (AS TO ALL DEFENDANTS)

24

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

95.     Plaintiff realleges and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

96.     Defendants are licensed institutional lending experts with the privilege of engaging the general marketplace for the sale of an exclusive service. And Defendants are given this privilege on the condition that they are held to a higher standard of regulatory compliance, fair practice, duty, conscience, expertise and competence, among others. Yet the defendants in this case have exploited their public privilege and engaged in systematic misconduct, reaping profits not only from the Plaintiff's home mortgage and HELOC, but from a larger scheme of profiteering off of illegal mortgages spanning over more than a decade, throughout the country. Plaintiff's case as alleged and to be proven at trial, leads to not only preclusion of strict enforcement of the security deed, but also will likely result in permanent injunction and damages both actual and punitive against the Defendants.

97.     The Plaintiff has made multiple clear and convincing cause of actions in which the Plaintiff is likely to succeed. Those arguments, including arguments for fraud, fraud in the inducement, deceptive business practices, and others, are factually supported and are likely to lead to a decision in favor of Plaintiff. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

98.     Defendants threatened wrongful conduct to foreclose and sell the property to a third party, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff by the foreclosure and forced sale of the property. The Subject Property is not just property but home to the Plaintiff, the wrongful loss of

25

which is unique and cannot be adequately remedied at law.   Further, any foreclosure and forced sale of the property will reduce the value of the property and jeopardize Plaintiff's interest in the Property. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

99.       Plaintiff has no adequate remedy at law for the injuries that are threatened as a foreclosure and forced sale would wrongfully deprive Plaintiff of their property rights, create extensive disruption and harm in every aspect of Plaintiff's life, and reduce Plaintiff's equity interest in the property. On this ground alone, the court may grant the temporary restraining order as permitted under O.C.G.A. §§9-5-1 and 9-11-65.

100.      As a proximate result of defendants' wrongful conduct, Plaintiff equity interest and potential sale has been totally lost. Plaintiff will be further damaged if defendants are allowed to proceed with the sale of the foreclosed property. The full amount of this damage is not now known to Plaintiff, and Plaintiff will amend this complaint to state this amount when it becomes known to them or on proof of the damages.

101.      An interlocutory injunction enjoining defendants from foreclosure upon the Subject Property maintains the status quo, prevents perpetuation of irreparable harm and further tortuous acts, serves the principals of justice and equity, and is strongly supported as to the merits under the facts and legal arguments outlined herein.

WHEREFORE, Plaintiff prays for interlocutory injunctive relief to enjoin Defendants from foreclosing on the Subject Property.

## AS TO ALL CAUSES OF ACTION PLAINTIFF PRAY FOR JUDGMENT AS FOLLOWS:

26

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1. Pursuant to O.C.G.A. § 10-1-372, et. seq., that all defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them be permanently enjoined from making any untrue or misleading statements or falsely reporting negative credit to reporting agencies.

2. Pursuant to O.C.G.A. § 10-1-372, et. seq., that the Court make such orders or judgments as may be necessary to prevent the use or employment by any defendant of any practices which violate, or which may be necessary to restore to any person interest any money or property, real or personal, which may have been acquired by means of any such practices

3. Pursuant to O.C.G.A. § 10-1-372, et. seq., that this court make such order or judgments as may be necessary to prevent the use of employment by any defendant of any practice which constitutes a deceptive trade practice or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful actions.

4. Damages sustained by the Plaintiff due to defendants wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

5. For rescission;

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional and wrongful acts;

8. That Plaintiff recover reasonable attorneys fees and for to recover its cost of suit;

9. For such other relief that the Court deems just, proper, and equitable.

27

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**DATED:** May 12, 2009                                **Respectfully Submitted,**

IRENE KIM, ESQ.
Bar # 141924
Geerdes and Kim, LLC
3483 Satellite Blvd.
Duluth, Georgia 30096
404-257-1777
404-257-1050 (fax)
**ATTORNEY FOR PLAINTIFF**

28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

*136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303*

## SUMMONS

Cen Jin et al

)
)
)
)

**Plaintiff,**

vs.

Terrace mortgage Co., et al

)
)
)
)
)
)
)

**Defendant**

)
)
)
)
)

Case No.: 2004CV169015

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This ____12____ day of ____May____, 20 _09_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By _Grace Vaughn_
Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you_____, 20_____

_____
Deputy Sheriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**